## HENRY FULLER
### v.
## MONROE HEATH ET AL.

1. CITIES—CONTRACTING INDEBTEDNESS—CHICAGO CERTIFICATES OF 1877.—The certificates of 1877 were in terms drawn upon and payable out of a special fund, and in no other way; and the parties receiving them, did so, discharging the city from all liability on account of the claim for which they were given, taking alone their chances to collect the same from such special fund. This being the case, it is but giving one thing for another, and is not an increasing of the city indebtedness. The issue of such certificates is not in conflict with the provisions of the Constitution.

2. THE CERTIFICATES OF 1875.—Although the certificates of 1875, were not, by their terms, drawn upon any special fund, they were issued as a means of meeting the current expenses of the city for the year 1875, and were drawn after the appropriation and levy of the tax, out of which it is now proposed to pay them, was actually made ; and it would not be inequitable for the city authorities to retire them, giving in substitution therefor, other certificates drawn against the special fund designed for their payment, and to anticipate which they were issued, which would stand on the same footing as the certificates of 1877. The holders of these certificates have an equitable claim to be paid out of the tax levy of that year.

APPEAL from the Superior Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

Mr. EDWARD ROBY, for appellant; insisted that no tax is regarded by Illinois laws as in the treasury till the money gets there. It is a mere debt or chose in action, a right to demand, secured or unsecured, as the statute fixes or does not fix a lien, and cited Rev. Stat. of 1874, 899, §§ 253, 254; p. 896, §§ 229, 230; p. 883, § 155; p. 884, §§ 156, 157, 158, 160, 255, 230, 191, 177; Chicago Comptroller's Report, Jan. 1, 1878, 8, 9, 12, 120; Gross' Stat. 636, §§ 313, 317 ; Schaeffer v. The People, 60 Ill. 179; Hill v. Figley, 23 Ill. 418; Burrill's Law Dic. "Lien"; Bouvier's Law Dic. "Lien"; Dunlap v. Gallatin Co., 15 Ill. 7; Ryan v. Gallatin Co., 14 Ill. 78; Almy v. Hunt, 48 Ill. 45 ; Hamilton v. Chicago, 22 Ill. 581 ; Chicago Com. Coun. Proceedings, 1869, 557.

The law does not require the anticipation of the revenue, but

Fuller v. Heath et al.

on the contrary, requires the levy to be made, and the money to be in the treasury substantially, before the expenditure can begin: Constitution, Art. IV, §§ 17, 18; Art. IX, § 12; Rev. Stat. 227; City Incorporation Act, Art. VII, §§ 2, 3; general sections 92, 93, 94, 95, 96, 97, 98, 99, 111, 113; p. 218, § 62; p. 227, §§ 89, 90, 91; p. 229, § 104; p. 878, § 122; p. 960, §§ 43, 44; Com'rs of Highways v. Newell, 80 Ill. 587; Glidden v. Hopkins, 47 Ill. 525; Allerton v. Kimball, 10 Chicago Legal News, 209; Colburn v. Mayor of Chattanooga, 17 Am. L. Reg. 191; Rev. Stat. 880, §§ 138, 154.

Mr. Joseph F. Bonfield, for appellees; that current taxes may be appropriated, in anticipation of their receipt, to the payment of proper and ordinary current expenses, as if at the time they were in the city treasury, and such appropriation is not the creation of a debt; cited Grant v. City of Davenport, 36 Iowa, 396; People v. Pacheld, 27 Cal. 175; Moppekers v. State Cap. Com'rs, 16 Cal. 253; The State v. McAuley, 15 Cal. 455; The State v. Medbury, 7 Ohio, 522; The State v. Mayor, 23 La. An. 358.

The tax appropriated must at the time be actually levied: City of Springfield v. Edwards, 84 Ill. 626; Law v. The People, 8 Law Jour. 339.

The city has authority by virtue of its granted powers and those necessary to carry out the objects of its creation, to issue the warrants set forth in the bill: Rev. Stat. 1874, 228, § 95; Dillon on Mun. Bonds, 9; Com'rs of Highways v. Newell, 80 Ill. 587; Grant v. City of Davenport, 36 Iowa, 396; Mayor v. Ray, 19 Wall, 468.

Such warrants are a legal tender in payment of the taxes of the fiscal year for which they were drawn. Bradwell's Laws 1877, 172.

Each of the warrants so drawn is *pro tanto* an equitable assignment of so much of the fund named therein to the payee, and gives him an equitable and specific lien upon such fund: Phelps v. Northrup, 56 Ill. 156; Kingman v. Perkins, 105 Mass. 111; Moore v. Lowery, 25 Iowa, 336; Morton v. Nailor, 1 Hill, 583; Burn v. Cawalho, 4 Milne & Craig, 690; Gren-

fel v. Dean, etc. of Windsor, 2 Bevan's R. 544; Mitchell v. Winslow, 2 Story, 630; 2 Story's Eq. § 1,040.

MURPHY, P. J. On the 17th day of April, 1878, Henry Fuller, the appellant, a resident and tax payer of the city of Chicago, exhibited his bill of complaint in the Superior Court of Cook county, representing that on the 8th day of August, 1870, the date of the adoption of the present Constitution of this State, the bonded debt of the city was over $13,000,000, far in excess of the constitutional limit of 5 per cent. upon the assessed value of the taxable property of the city, as ascertained by the assessment thereof for State and county purposes; that, notwithstanding that fact, the officers of said city have from time to time received large sums of money in trust for specific purposes, to wit: upon special assessments, City Hall fund and other funds, and perverted the same and paid them out for general city purposes, as they deemed best, to the amount of $4,000,000 and over, and that, in violation of the plain provisions of the Constitution, they had borrowed in the name of the city a large sum, to wit: the sum of $5,000,000, which the mayor and comptroller had paid out as they saw fit; that, in the year 1875, the city officers, pretending to be authorized so to do by an ordinance passed April 30, 1875, and by certain statutes of the State, borrowed in addition to the existing debt, a large sum, to wit: $4,500,000, and issued certificates of indebtedness therefor in denominations to suit lenders, bearing such interest as was agreed upon, in the following form:

"This is to certify that the city of Chicago acknowledges to owe *John Doe* the sum of $1,000 lawful money of the United States of America, which sum the city promises to pay to said *John Doe* or order, —— months after the date hereof (without grace), at the office of the treasurer of the city of Chicago, with interest thereon at the rate of — per cent. per annum from May 1, 1875.

"This loan having been authorized by Sec. 26 of amendments to the City Charter, approved Feb. 15, 1865, and by Sec. 7 of the act of the General Assembly of the State of Illinois, amending the City Charter, approved April 19, 1869.

"In testimony whereof, the mayor and comptroller of the said

city have signed, and the clerk countersigned, these presents, and caused the seal of said city to be hereunto affixed, this —— day of ——, A. D. 1875."

That $4,000,000 of said sum has since been paid by said officers out of moneys in the treasury of the city, with the interest thereon. That they threaten now and intend to cause the residue thereof to be paid in the like manner.

That in the year 1877, the officers of said city, pretending to be authorized so to do by an ordinance of the City Council of the said city of Chicago, passed April 10, 1877, borrowed a large sum in addition to said existing debt, to wit: over $3,000,000, and issued certificates therefor in the following form, to wit:

"This is to certify that *John Doe* has advanced to the City of Chicago $1,000 lawful money of the United States, to meet that part of the current expenses of the year 1877, for which an appropriation has been made for said year for the general appropriation fund, and that said sum will be paid to *John Doe* or order, upon the 21st day of July, 1878 (without grace), at the office of the treasurer of the City of Chicago, with semi-annual interest thereon, at the rate of 6 per cent. per annum from date, out of the taxes levied for said fiscal year, said tax levy having been heretofore actually made.

" The treasurer of the city is hereby ordered to make said payment, as aforesaid, and charge to general appropriation fund. This warrant is issued for an amount not exceeding the appropriation for the above account, and not exceeding the amount of uncollected taxes apportioned to its payment, and which will be held and applied thereto. All of which is sanctioned by the mayor and finance committee, and duly authorized by law and the ordinance of said city.

" In testimony whereof, the mayor and comptroller of said city have signed, and the clerk countersigned, these presents, and caused the seal of said city to be hereunto affixed, the 21st day of July, A. D. 1877."

Said certificates bear diverse dates, and are made payable at diverse times in 1878.

That large amounts of taxes for the year 1877 and prior

years are due and unpaid to the city, to-wit : $5,000,000; that a large sum of money—to-wit: the sum of $500,000—is in the treasury of the city; that several millions more is about to be collected and paid into the said treasury, and that the mayor and comptroller of said city threaten to cause the certificates of indebtedness and time warrants to be paid therefrom,—prays for an injunction restraining the city authorities from paying any of said pretended debts incurred since Aug. 8, 1870, and that, pending the suit, the mayor and comptroller be restrained from issuing any warrants on the treasurer of the city for the payment of such debts or interest thereon.

To this bill the defendants answer jointly and severally, admitting the issue of the certificates of indebtedness as alleged in the bill, and claiming that they were issued not for the purpose alleged in said bill—that is, to borrow money on the credit of the city for general purposes—but to meet the current expenses of the city government for the years in which they were issued respectively, and that they were issued from time to time in anticipation of the collection of taxes levied for the current expenses of the year in which they were drawn, and were based upon and within the appropriation made for the expenses of the respective years for which they were drawn, and denying that they have ever paid any of said certificates, or threatened or had given out that they intended to pay them except as they paid them out of the taxes levied in pursuance of the appropriation of the City Council for the respective years in which they were issued, and out of the fund or revenue for the anticipation of which they were issued; and disclaim generally and specifically any purpose to pay said certificates except in the manner above stated.

By the agreement of counsel, the case was heard by the court below upon bill and answer, and stipulation that the defendants should have the same benefits as if they had demurred to the portions of the bill not answered; and the prayer of the bill being denied *pro forma* and the bill dismissed, the complainant in the court below brings the record to this court by appeal, and assigns for error the denial of the prayer of, and dismissing the bill, and rendering judgment for costs against complainant.

Fuller v. Heath et al.

It will only be necessary to consider the first assignment of error under the view of the case taken by the court.

It is claimed by the appellant that the facts alleged constitute an infraction of Sec. 12, Art. IX. of the Constitution, which is as follows :

" No city shall be allowed to become indebted in any manner, or for any purpose, to an amount including existing indebtedness, in the aggregate exceeding 5 per cent. of the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to incurring such indebtedness. Any county, city, school district, or other municipal corporation, incurring any indebtedness as aforesaid, shall, before or at the time of doing so, provide for the collection of a direct annual tax, sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof, within twenty years from the time of contracting the same."

It is admitted by the defendants that if these certificates operate to increase the indebtedness of the city, their issue would be in violation of the above section of the Constitution, and therefore void; and, as a consequence, the officers of the city should be prevented from paying them. But it is insisted by the defendants that they are not obligations of the city within the Constitutional prohibition, and therefore do not increase its indebtedness.

The grounds of their position, as we understand them, are that these certificates were issued from time to time by the city authorities for the purpose of defraying the current expenses of the city government for the fiscal year in which they bear date respectively; that in no instance in 1875 or 1877, were such certificates issued until after there was an appropriation by ordinance and levy of the tax to pay the expenses of the city government for the current year, and that the certificates were drawn upon such fund so created by said appropriation and levy, and that in no case did the amount of said certificates so issued equal the amount of said levy. That as to the certificates issued in 1877, they were in terms drawn upon said special fund, and payable out of it, and in no other way, and that

parties receiving them did so discharging the city from all liability on account of the claim for which they were given, taking alone their chances to collect the same from such special fund. This being the case, it is giving one thing for another, and in no legal sense can be said to be an increase of the city indebtedness.

The case of the city of Springfield v. Edwards, 84 Ill. 626, was a case very similar to this, being a bill filed in chancery by a tax payer to enjoin the city authorities from increasing the indebtedness of the city and levying taxes for its payment in violation of the Constitution. In discussing the lawful power of the city in that case, the court, by Scholfield, J., says:

"If a contract or undertaking contemplates in any contingency a liability to pay when the contingency occurs, the liability is absolute, the debt exists, and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred. And, since the purpose of the debt is expressly excluded from consideration, it can make no difference whether the debt be for necessary current expenses or for something else. In this view we are only prepared to yield our assent to the rule recognized by the authorities referred to with this qualification: 1. The tax appropriated must, at the time, be actually levied. 2. By the legal effect of the contract between the corporation and the individual, made at the time of the appropriation and issuing and accepting of a warrant or order on the treasury for its payment, when collected, must operate to prevent any liability to accrue on the contract against the corporation."

"The principle, as we understand, is, there is in such case no debt, because one thing is simply given and accepted in exchange for another."

From the doctrine of this case, it is apparent that the issue of the certificates of 1877 were not in violation of the Constitution, because they were drawn upon a particular fund, actually existing to defray the current expenses of the city for that year, and upon the fund created by the tax levied and appropriated for such purpose. This proceeding does not operate to create any liability against the corporation as interpreted by

the Supreme Court, the appropriation and levy having in this case been made before their issue brings them within the rule thus laid down. At the September term of that court for 1877, in the case of Ida Irena Law v. The People ex rel. Louis C. Huck, the Supreme Court, in discussing the question of what was an anticipation of revenue already levied, says:

"The manner of anticipating revenue already levied, was before us, and fully considered in the case of City of Springfield v. Edwards, 84 Ill. 626, and on the able arguments in this case, we see no reason to change the rule there announced."

Thus it will be seen that the Court means to adhere to the rule laid down in the Springfield case, as the approved method of anticipating revenue by municipalities.

In the Commissioners of Highways v. Thomas Newell et al. 80 Ill. 587, the Court seems to recognize the right of the Commissioners of Highways to anticipate their revenue by the same method as was approved in the case first above cited.

As to those certificates which appear to be issued in 1875, for the purpose of defraying the current expenses of the city, and which do not in terms appear to be drawn upon any special fund, it is insisted by the complainant that, being drawn upon the general fund of the city and in excess of the constitutional limit, they are therefore void. Even though, as a foundation of an action at law against the city, they may be held void, still does it follow that their payment out of the fund mentioned would be inequitable? It appears from the answer that they were issued as a means of meeting the current expenses of the city for the year 1875, and were drawn after the appropriation and levy of the tax out of which it is now proposed to pay them, was actually made. It would not be inequitable, therefore, for the city authorities to retire them, giving in substitution therefor other certificates drawn against the special fund designed for their payment, and to anticipate which they were issued, which would stand on the same footing with the certificates of 1877, which we have shown is a method of anticipating the revenue sanctioned by law. If this may be done, as we think it may, it seems a good test of the equitable claim of the holder of these certificates to be paid out

of the tax levy of that year, for it will not be claimed that the mere change in the form of the certificates will, in any degree, strengthen their equities. If, then, it be equitable to pay these certificates out of the said tax levy of 1875 when collected, and that is all the defendants claim the right to do, it is not perceived why a court of equity should enjoin the city authorities from so doing.

Having shown that the holders of these certificates have the equitable right to be paid the amount due thereon from the tax levy of that year, if the city authorities choose so to pay them, there is no valid reason why they should be prevented.

The court therefore decided correctly in denying the injunction and dismissing the bill.

Finding no error in the record, the decree of the court below is affirmed.

Decree affirmed.